# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DERON MCCOY, JR., )
 )
                 Plaintiff, )
 )
vs. ) Case No. 12-03050-JAR-KGS
 )
 )
DAVID L. MILLER et. al., )
 )
                 Defendants. )
 )

## MEMORANDUM AND ORDER

Plaintiff Deron McCoy, Jr. filed this suit against Defendants Michael Robinson, David Miller, Chris Schultz, and Lee Campbell, in their individual and official capacities, for several constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims for false arrest and false imprisonment, seeking monetary, compensatory, and punitive damages. Before the Court is Defendants David Miller, Chris Schultz, and Lee Campbell's Motion to Dismiss (Doc. 67). The matter is fully briefed and the Court is prepared to rule. The Court **grants** in part and **denies** in part Defendants' motion to dismiss for the reasons set forth below.

## I.    Factual Allegations

The following facts are alleged in the Second Amended Complaint and are construed in the light most favorable to Plaintiff. Defendants Miller, Schultz and Campbell are police officers for the Hutchinson Police Department. On October 19, 2010, Officers Miller, Schultz, and Campbell arrived at Plaintiff's residence in Hutchinson, Kansas, which he shared with his girlfriend and infant daughter. Officers knocked on the door and requested entry into Plaintiff's residence but did not provide an explanation for why they wanted to gain entry. Not until Plaintiff's trial did Officer Campbell testify that the officers were dispatched to investigate a

"disturbance call." Plaintiff and his girlfriend denied the request because the officers did not have a search warrant. Plaintiff and his girlfriend further explained that no person from their residence contacted the police department, and therefore, officers had no reason to search their residence. Still, Officer Miller instructed Officer Schultz to kick open the back door of the residence to gain access. After Officer Miller kicked open the door, the officers entered the residence with their weapons drawn and pointed at Plaintiff and his girlfriend. Thereafter, Plaintiff and his girlfriend were arrested for obstruction of justice.

Plaintiff was initially released on bond for several months and then later held in the Reno County jail until completion of the proceedings in which Michael Robinson was the prosecutor. Plaintiff alleged that the Kansas court acquitted him, reasoning that a person could not be adjudged guilty of obstruction of justice while exercising his constitutional right to be free from searches and seizures.

Plaintiff then filed this action, alleging claims under 42 U.S.C. § 1983 for violations of his Eighth Amendment and Fourth Amendment rights and state law claims for false arrest and false imprisonment. In an order of February 20, 2013, the Court dismissed Plaintiff's Eighth Amendment claim for failure to state a claim.[1] Defendants now move for dismissal of Plaintiff's Fourth Amendment claim under Fed. R. Civ. P. 12(b)(1) and Plaintiff's state law claims on the ground that the statute of limitations has run.

## II. Legal Standard

Defendants move to dismiss the official and individual capacity claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and because they are

---

[1] The Court need not consider Plaintiff's renewed Eighth Amendment claim, as it has already been dismissed.

entitled to qualified immunity. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[3] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth,

---

[2] Fed. R. Civ. P. 8(a).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *Id.*

or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Because Plaintiff pursues his action *pro se*, the Court must remain mindful of additional considerations. A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[12] Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[13] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[14] For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[15] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal

---

[9] *Id.* at 679.

[10] *Id.*

[11] *Id.* at 678.

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 1972)).

[13] *Id.*

[14] *Id.*

[15] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

theory on plaintiff's behalf."[16]

## III. Discussion

Pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint asserts claims for violations of his Fourth and Eighth Amendment rights. "Section 1983 does not create any substantive rights, but provides a recovery for the deprivation of federal rights."[17] The statute "imposes liability for violations of rights protected by the constitution or laws of the United States, not for violations of duties of care arising out of tort law."[18] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[19] Furthermore, plaintiff must allege a violation of his own rights, and not the rights of someone else.[20]

### A. *Fourth Amendment Claims*

Plaintiff alleges that Defendants violated his Fourth Amendment rights by forcibly entering his home without a warrant, consent, probable cause, or exigent circumstances. The Fourth Amendment protects individuals from unreasonable government intrusion on the home.[21] While there is a presumption that warrantless searches and seizures inside a home are unreasonable, that presumption can be rebutted "[w]hen faced with special law enforcement

---

[16] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[17] *Scothorn v. Kansas*, 772 F. Supp. 556, 560 (D. Kan. 1991).

[18] *Archuleta v. McShan*, 897 F.2d 495, 496 (10th Cir. 1990).

[19] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[20] *Archuleta*, 897 F.2d at 497.

[21] *United States v. Najar*, 451 F.3d 710, 712 (10th Cir. 2006).

needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable."[22] "One important exception to the warrant requirement is the presence of exigent circumstances, such as the presence of evanescent evidence or an emergency requiring the officer's aid."[23] In determining whether the risk of personal danger creates exigent circumstances, courts must examine "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable."[24]

Defendants argue that Plaintiff's allegations that Defendants entered the residence absent exigent circumstances and probable cause are merely legal conclusions that offer no factual basis for his Fourth Amendment claim. The Court disagrees. In support of his Fourth Amendment claim, Plaintiff alleges that he and his girlfriend reported to Defendants that they did not contact the police department and denied consent to enter their residence. Plaintiff further alleges that Defendants did not explain why they wanted to gain entry before knocking down the door with their guns drawn.

Moreover, Plaintiff's claim does not suggest that there was a risk of personal danger to create exigent circumstances. Defendants came to Plaintiff's residence in response to a "disturbance call." Several courts have recognized the importance of a 911 call in assessing

---

[22] *Id.*

[23] *United States v. Martinez*, 686 F. Supp. 2d 1161, 1181 (D.N.M. 2009) (citing *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)).

[24] *United States v. Gordon*, 741 F.3d 64, 70 (10th Cir. 2014).

6

whether there was an immediate need to protect the lives or safety of others.[25] However, in these cases, the 911 call was either placed by someone in the home or there were facts in addition to the phone call to suggest that someone was in danger.[26] In the instant case, Plaintiff and his girlfriend reported that they did not contact the police department and Plaintiff has not alleged additional facts that suggest someone in the home was at risk. Although Defendants have characterized it as a "disturbance call," at this early stage, it is unclear what kind of disturbance was allegedly reported, what circumstances surrounded the call, the identity of the caller, the reliability of the caller, or whether the call was made to 911 or a non-emergency hotline. Without more, the Court declines to reach the conclusion that, based upon the facts alleged, a risk of personal danger created exigent circumstances. Accordingly, the Court finds that Plaintiff has stated a plausible claim for a violation of his Fourth Amendment rights.

### B.    *Qualified Immunity*

Upon Defendants' assertion of a qualified immunity defense, Plaintiff has a two-part burden. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[27] To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows (1) that the

---

[25]*Najar*, 451 F.3d at 719–20 (10th Cir. 2006) (collecting cases and finding that exigent circumstances existed where officers tried to make contact with someone in the home for thirty minutes after the dispatcher reported a 911 call from inside the residence, occupant refused to answer the telephone or door, and gunshots and arguing were reported at appellant's address); *United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir. 2002) (holding that exigent circumstances existed where the dispatcher reported two anonymous phone calls to officers relaying a report of gunshots and arguing at appellant's address and arrived to see appellant and his wife on the porch of the home); *see also United States v. Richardson*, 208 F.3d 626, 631 (7th Cir. 2000) (explaining "we do not exclude the possibility of a case in which it would be objectively unreasonable for a police officer to rely on a 911 call [] because of additional information available to the officer").

[26]*Id.*

[27]*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011).

official violated a statutory or constitutional law, and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[28]  Qualified immunity is a defense that must be pleaded by the defendant, but once the defendant raises it, the burden of proof is on the plaintiff.[29]  Unless the plaintiff proves both prongs, the official is entitled to qualified immunity.[30]  Courts have discretion to decide which of the two prongs of the analysis to address first.[31]

The disturbance call standing alone, without further detail surrounding the circumstances of the call, and Plaintiff's denial of entry after explaining that an individual from his residence did not make the call, do not show reasonable conduct by the officers that would warrant qualified immunity on the basis that they did not violate a constitutional right that was clearly established at that time.  Defendants have raised several facts outside of the Complaint in support of their qualified immunity analysis, which the Court cannot consider at this stage.  Thus the Court finds that Plaintiff has alleged sufficient facts showing that Defendants' conduct likely violated his Fourth Amendment rights.  The Court cannot conclude at this stage that Defendants acted reasonably.  Although Defendants argue that exigent circumstances were present as an exception to the Fourth Amendment warrant requirement, the Complaint does not clearly support that argument.  Accordingly, the Court finds that Defendants are not entitled to dismissal of Plaintiff's Fourth Amendment claims based on qualified immunity.

---

[28]*Id.* at 2080.

[29]*Gomez*, 446 U.S. at 640.

[30]*See al-Kidd*, 131 S.Ct. at 2080.

[31]*Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

## C. Official Capacity Claims

Plaintiff brings suit against Defendants in their individual and official capacities. "A suit against a city official in his official capacity is no different from a suit against the City itself."[32] The City of Hutchinson may not be held liable under § 1983 simply because it employs a person who is liable under § 1983.[33] Instead, to hold a city liable under § 1983 for acts of its employees, a plaintiff must establish that the municipality has a policy or custom that directly caused the constitutional deprivation of rights.[34]

While Plaintiff has stated a plausible claim for deprivation of constitutional rights, he has not alleged sufficient facts to establish that Hutchinson has a policy or custom that directly caused such a deprivation. In fact, Plaintiff states "If during discovery (which has already commenced) it comes to light that there has been a failure to adequately train or discipline the defendnts (sic), the official office of the defendants would be liable."[35] The Supreme Court has explained:

> [I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact . . . . Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.[36]

---

[32] *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995).

[33] *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (10th Cir. 1978).

[34] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

[35] Doc. 71 at 4.

[36] *Canton*, 489 U.S. at 388–89.

Plaintiff's statement that discovery could reveal a failure to adequately train or discipline is not indicative of a deliberate or conscious choice by the city to fail to train Defendants. Outside of legal conclusions, Plaintiff does not allege that any specific policies or customs by Hutchinson led to a constitutional deprivation. Plaintiff must state factual allegations, not factual possibilities. Accordingly, Plaintiff's Fourth Amendment claims against Defendants in their official capacities are dismissed.

### D. State Law Claims

Although Plaintiff conflates his Fourth Amendment and Eighth Amendment claims (which were previously dismissed) with state law claims for false arrest and false imprisonment, to the extent that Plaintiff asserts separate state law claims for false arrest and false imprisonment, the Court finds that they are barred by the statute of limitations.

Plaintiff argues that the statute of limitations has not run on his false arrest and false imprisonment claims, urging that a two-year statute of limitations applies. In Kansas, a one-year statute of limitations governs claims arising out of conduct by law enforcement officers that results in false arrest or imprisonment.[37] Plaintiff alleges that Defendants arrested him and subsequently falsely imprisoned him on October 19, 2010. Therefore, the statute of limitations expired on October 19, 2011. However, Plaintiff did not file his claim until February 22, 2012, four months after the statute of limitations expired. Therefore, the Court finds that Plaintiff's claims for false arrest and false imprisonment are barred by the applicable statute of limitations and are hereby dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants David Miller,

---

[37] K.S.A. § 60-514(b); *Brown v. Kansas*, 927 P.2d 938, 944 (Kan. 1996).

Chris Schultz, and Lee Campbell's Motion to Dismiss (Doc. 67) is **granted** in part and **denied** in part. Defendants' motion to dismiss is granted with respect to the following claims which are hereby dismissed in their entirety: Fourth Amendment claims against Defendants Michael Robinson, David Miller, Chris Schultz and Lee Campbell in their official capacities are dismissed; and the state law claim for false imprisonment, and state law claim for false arrest are dismissed. Defendants' motion to dismiss is denied with respect to Plaintiff's Fourth Amendment claims against Defendants Michael Robinson, David Miller, Chris Schultz, and Lee Campbell in their individual capacities.

Dated: April 29, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE